UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ROBERT G. KRAMER,<br><br>　　　　　　　Defendant. | No. 1:26-cv-00991-VSB |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Plaintiff*
28 Liberty Street
New York, New York 10005

NINA M. VARINDANI
THOMAS AUSTIN BROWN
Assistant Attorneys General, Investor Protection Bureau

STEVEN J. GLASSMAN
Special Counsel in Economic Justice, Economic Justice Division

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.    THE COMPLAINT ASSERTS ONE STATE LAW CLAIM AGAINST DEFENDANT
BASED ON HIS INSIDER TRADING IN EMERGENT STOCK ......................................... 3

II.   PROCEDURAL HISTORY ...................................................................................... 5

ARGUMENT ........................................................................................................................ 5

I.    LEGAL STANDARD ............................................................................................... 5

II.   KRAMER CANNOT INVOKE THE FEDERAL OFFICER REMOVAL STATUTE
BECAUSE HE WAS NOT ACTING AT THE DIRECTION OF FEDERAL OFFICERS
WHEN HE EXECUTED THE ILLEGAL TRADES .................................................. 6

III.  THERE IS NO FEDERAL QUESTION JURISDICTION IN THIS ACTION ................. 8

A.   The Complaint Does Not Raise a Federal Issue that is Actually Disputed or
Substantial.................................................................................................................. 9

B.   This Court's Exercise of Jurisdiction Over this Action Would Disturb the
Congressionally Approved Balance Between Federal and State Courts.............................. 13

IV.   THIS COURT LACKS DIVERSITY JURISDICTION BECAUSE NEW YORK IS THE
REAL PARTY IN INTEREST.................................................................................... 14

CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
  458 U.S. 592 (1982)................................................................................................... 15

*AMTAX Holdings 227, LLC v. Cohnreznick LLP,*
  136 F.4th 32 (2d Cir. 2025) ....................................................................................... 9

*Anwar v. Fairfield Greenwich Ltd.,*
  676 F. Supp. 2d 285 (S.D.N.Y. 2009) ...................................................................... 5

*Anwar v. Fairfield Greenwich Ltd.,*
  728 F. Supp. 2d 354 (S.D.N.Y. 2010) ...................................................................... 3

*Caterpillar Inc. v. Williams,*
  482 U.S. 386 (1987)................................................................................................... 8

*City of New York v. Exxon Mobil Corp.,*
  733 F. Supp. 3d 296 (S.D.N.Y. 2024) ......................................................................11

*Clark v. Bay Park Ctr. for Nursing & Rehab.,*
  No. 19-CV-506 (VSB), 2019 WL 3852430 (S.D.N.Y. Aug. 16, 2019).....................11

*Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC,*
  No. 24-CV-326 (VSB), 2024 WL 620649 (S.D.N.Y. Feb. 14, 2024) ...................... 13

*CPC Int'l Inc. v. McKesson Corp.,*
  70 N.Y.2d 268 (1987)............................................................................................... 15

*Dowd v. Alliance Mortg. Co.,*
  339 F. Supp. 2d 452 (E.D.N.Y. 2004) ..................................................................... 13

*Fin. & Trading, Ltd. v. Rhodia S.A.,*
  No. 04 CIV. 6083 (MBM), 2004 WL 2754862 (S.D.N.Y. Nov. 30, 2004) .............. 10

*Flynn ex rel. Moody's Corp. v. McDaniel,*
  689 F. Supp. 2d 686 (S.D.N.Y. 2010) ......................................................................11

*Fracasse v. People's United Bank,*
  747 F.3d 141 (2d Cir. 2014) ...................................................................................8-9

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,*
  463 U.S. 1 (1983)..................................................................................................... 12

*Gunn v. Minton*,
568 U.S. 251 (2013) ................................................................................................. 9, 12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
488 F.3d 112 (2d Cir. 2007) ......................................................................................... 5, 6

*In re OxyContin Antitrust Litig.*,
821 F. Supp. 2d 591 (S.D.N.Y. 2011) .......................................................................... 5, 6

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp. 3d 378 (S.D.N.Y. 2014) ............................................................................. 16

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008) ........................................................................................... 6

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986) ........................................................................................................ 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*,
311 F. Supp. 149 (S.D.N.Y. 1970) ........................................................................... 14, 15

*Mississippi v. AU Optronics Corp.*,
571 U.S. 161 (2014) ....................................................................................................... 14

*Moor v. Cty. of Alameda*,
411 U.S. 693 (1973) ....................................................................................................... 14

*New York v. Amazon.com, Inc.*,
550 F. Supp. 3d 122 (S.D.N.Y. 2021) ................................................................. 8, 14, 16

*New York v. DailyPay, Inc.*,
No. 25-CV-3439 (JGK), 2025 WL 2695712 (S.D.N.Y. Sept. 19, 2025) ...................... 12, 13

*New York v. MoneyLion Inc.*,
No. 25-CV-4093 (CM), 2025 WL 3154497 (S.D.N.Y. Nov. 12, 2025) ......................... 13

*New York v. Grasso,*
350 F. Supp. 2d 498 (S.D.N.Y. 2004) ........................................................................... 11

*New York v. Shinnecock Indian Nation,*
686 F.3d 133 (2d Cir. 2012) .......................................................................................... 12

*People v. Merkin,*
26 Misc. 3d 1237(A) (Sup. Ct., N.Y. Cnty. 2010) .......................................................... 3

iii

*People of New York v. Charles Schwab & Co.,*
   No. 09 CIV. 7709 (LMM), 2010 WL 286629 (S.D.N.Y. Jan. 19, 2010)................................... 15

*People v. Florentino,*
   116 Misc. 2d 692 (Crim. Ct. N.Y. Cnty. 1982) ........................................................... 10

*People v. Napolitano,*
   282 A.D.2d 49 (1st Dep't 2001)......................................................................... 10

*Postal Tel. Cable Co. v. Alabama,*
   155 U.S. 482 (1894) ....................................................................................... 14

*Purdue Pharma L.P. v. Kentucky,*
   704 F.3d 208 (2d Cir. 2013) ............................................................................. 14

*State of N.Y. v. Gen. Motors Corp.,*
   547 F. Supp. 703 (S.D.N.Y. 1982) .................................................................. 15, 16

*State by Tong v. Exxon Mobil Corp.,*
   83 F.4th 122 (2d Cir. 2023)............................................................................ 6, 7, 8

*Sung ex rel. Lazard Ltd. v. Wasserstein,*
   415 F. Supp. 2d 393 (S.D.N.Y. 2006) ................................................................. 10

*Veneruso v. Mount Vernon Neighborhood Health Ctr.,*
   933 F. Supp. 2d 613 (S.D.N.Y. 2013) .............................................................. 12-13

**Federal Statutes**

28 U.S.C. § 1331.............................................................................................. 1, 2, 5

28 U.S.C. § 1332............................................................................................... 1, 2

28 U.S.C. § 1332(a)(1)......................................................................................... 14

28 U.S.C. § 1367.............................................................................................. 1, 5

28 U.S.C. § 1367(a) ............................................................................................. 3

28 U.S.C. § 1441.............................................................................................. 1, 5

28 U.S.C. § 1442............................................................................................. 1, 2, 5

28 U.S.C. § 1442 (a)(1)........................................................................................ 6, 7

iv

28 U.S.C. § 1446 .......................................................................................................... 1, 5

28 U.S.C. § 1447 ............................................................................................................. 5

**State Statutes**

N.Y. Gen Bus. Law § 352 ......................................................................................... 1, 3, 5

N.Y. Gen Bus. Law § 352-c ...................................................................................... 1, 3, 5

**PRELIMINARY STATEMENT**

Plaintiff, the People of the State of New York, by its attorney, Letitia James, Attorney General of the State of New York ("Plaintiff" or "OAG"), commenced this enforcement action against Defendant Robert G. Kramer ("Defendant" or "Kramer") by filing a complaint in New York Supreme Court (the "Complaint") alleging that Defendant violated New York General Business Law Sections 352 and 352-c by engaging in illegal insider trading of Emergent BioSolutions Inc. ("Emergent" or the "Company") stock while in possession of material nonpublic information.

In 2020, in the midst of the COVID-19 pandemic, Kramer, the then-CEO of Emergent, engaged in illegal insider trading of Emergent stock while in possession of material nonpublic information regarding serious and unresolved issues at Emergent involving contamination and unmet production schedules for Emergent's manufacture of COVID-19 vaccine drug substance for AstraZeneca PLC ("AstraZeneca"). Kramer sold over $10 million worth of Emergent stock while the contamination and production problems remained undisclosed to the public, and just days before the stock's price began a steady decline following analyst concerns about production.

Despite the absence of any federal claims in the Complaint, Defendant improperly removed this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1442, and 1446 asserting that (i) OAG's claim against Defendant for insider trading is allegedly based on actions he undertook at the direction of federal officers; (ii) this Court has federal question jurisdiction because the Complaint purportedly asserts claims arising under federal law; and (iii) this Court has diversity jurisdiction even though the real party in interest is the State of New York.

Defendant's Notice of Removal is impermissibly predicated on an attempted rewriting of OAG's Complaint, and a misguided attempt to cast Defendant's personal stock trading as having been compelled by federal officials or federal regulations. A prompt remand is required.

Defendant's lead argument, seeking to invoke the federal-officer removal statute (28 U.S.C. § 1442), should be rejected because he has failed to establish, and cannot even plausibly contend, that he was acting under the direction of a federal officer when he planned for and then sold shares of stock in the Company for his own personal financial interest while he was serving as the Chief Executive Officer.

Similarly, Defendant has failed to establish that this Court has jurisdiction under 28 U.S.C. § 1331 since the Complaint does not raise substantial federal issues. The Complaint asserts claims under a single New York statute—the Martin Act. The adjudication of this action does not turn on a question of federal law, and Kramer's Notice of Removal completely disregards New York case law recognizing insider trading as an offense that may be prosecuted under the Martin Act. Further, the purported substantial federal issues that Kramer claims are raised in this action are instead Kramer's anticipated defenses to OAG's claims, which are insufficient to establish federal question jurisdiction.

Finally, this Court does not have jurisdiction under 28 U.S.C. § 1332 because diversity jurisdiction can only exist between citizens of different states, and it is well-settled that no state can be a "citizen" for purposes of diversity jurisdiction. Nor can Kramer create diversity by arguing that New York citizens are the real parties in interest. The Complaint only seeks disgorgement and

not restitution as a form of relief. When, as here, the Attorney General brings an action to enforce state law pursuant to her exclusive authority, she acts in the sovereign interest of the State.[1]

Based on the foregoing, Plaintiff respectfully requests that the Court remand this case to the New York Supreme Court.

## BACKGROUND

### I. THE COMPLAINT ASSERTS ONE STATE LAW CLAIM AGAINST DEFENDANT BASED ON HIS INSIDER TRADING IN EMERGENT STOCK

New York has a public policy of protecting its residents and its securities markets from business practices that are fraudulent, deceptive, or illegal. OAG is empowered by the Martin Act, GBL § 352 *et seq.*, to investigate and prosecute cases to ensure that New York's investors and markets are safe and honest. *People v. Merkin*, 26 Misc. 3d 1237(A) (Sup. Ct., N.Y Cnty. 2010). The Martin Act authorizes OAG to commence a civil action based on a broad range of misconduct (including insider trading) and seek a broad range of relief, including injunctions, damages, and disgorgement of ill-gotten gains, as demanded in the Complaint. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 354, 367 (S.D.N.Y. 2010). Here, OAG specifically seeks an injunction against Defendant prohibiting him from future violations of the Martin Act, and an order directing Defendant to disgorge the proceeds of his illegal trades. *See* Complaint at 27-28.

On January 15, 2026, OAG filed the Complaint in New York state court alleging that Defendant violated the Martin Act, General Business Law Sections 352 and 352-c, by executing a plan to sell Emergent stock for personal profit while in possession of material nonpublic information. *See* Complaint, ECF No. 1 A-2.

---

[1] Because there is no original jurisdiction over any of OAG's claims, the Court also does not have supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claim.

3

Between April and July 2020, Emergent announced that it had entered into contracts with AstraZeneca and Johnson & Johnson to produce the active pharmaceutical ingredient, or "drug substance," for the Companies' respective COVID-19 vaccines. *Id*. ¶¶ 3-5. Emergent's contracts with AstraZeneca and Johnson & Johnson had a combined value of over half a billion dollars. *Id*. ¶ 5. In response to the announcements, Emergent's stock price nearly doubled, increasing from $68.11 on June 11, 2020, to a high of $134.46 on August 5, 2020. *Id*. ¶ 30.

Shortly into the production process, Emergent began experiencing serious manufacturing difficulties, including contamination issues that ultimately led to the rejection and destruction of multiple batches of vaccine drug substance, and an agreement between Emergent and AstraZeneca to pause production to investigate the root cause of the issues. *Id*. ¶¶ 7-9. As CEO of Emergent, Kramer was kept apprised of the serious issues with the production process. *Id*. ¶¶ 33-34, 39, 41, 45.

Despite the severity of these issues, all of which remained concealed from investors, in October 2020, Kramer asked his investment adviser to create a trading plan (the "Trading Plan") that would allow him to exercise stock options and simultaneously sell the acquired shares. *Id*. ¶¶ 10-11. Kramer finalized and executed the Trading Plan on November 13, 2020. *Id*. ¶ 11. Between January and February 2021, Kramer sold a total of 88,555 shares of Emergent stock in multiple transactions in the open market and realized total proceeds of $10,121,079.50. *Id*. ¶¶ 101-02. The Complaint alleges that Kramer violated the Martin Act by entering into the Trading Plan and selling shares of Emergent stock while having knowledge of the severe contamination issues which were not disclosed to investors.

## II.   PROCEDURAL HISTORY

On January 15, 2026, OAG commenced this case by filing the Complaint in the Supreme Court of the State of New York, New York County. The Complaint alleges one count against Defendant for violation of New York General Business Law Sections 352 and 352-c based on Defendant's entry into the Trading Plan and subsequent trades in Emergent securities while in possession of material nonpublic information. *Id*. ¶¶ 119-22.

On February 4, 2026, Kramer filed a notice of removal ("Notice of Removal") removing this case from New York state court to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446. *See* Notice of Removal, ECF No. 1. OAG now moves this Court pursuant to 28 U.S.C. § 1447 to remand this action back to state court, where it was originally filed.

## ARGUMENT

## I.   LEGAL STANDARD

"When a party challenges the removal of an action from a state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 595 (S.D.N.Y. 2011) (external citations omitted). Further, "out of respect for the limited jurisdiction of the federal court and the rights of states, [a court] must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("MTBE")*, 488 F.3d 112, 124 (2d Cir. 2007); *see also Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (holding that federal courts must construe the removal statute narrowly and any doubts regarding whether removal is proper should be resolved in favor of remand). "If the moving party cannot establish its right to removal by competent proof, the removal

is improper, and the district court must remand the case to the court in which it was filed." *Oxycontin*, 821 F. Supp. 2d at 595.

Here, Defendant asserts three arguments in support of his petition for removal: (i) OAG's claim against Defendant for insider trading is allegedly based on actions he undertook at the direction of federal officers; (ii) the Complaint purportedly asserts claims arising under federal law despite only asserting one cause of action based on violations of New York state law; and (iii) the parties, according to Defendant, are diverse. For the reasons set forth below, Defendant has failed to meet his burden of establishing that this Court has subject matter jurisdiction over this action. Therefore, remand to the New York Supreme Court is required.

## II. KRAMER CANNOT INVOKE THE FEDERAL OFFICER REMOVAL STATUTE BECAUSE HE WAS NOT ACTING AT THE DIRECTION OF FEDERAL OFFICERS WHEN HE EXECUTED THE ILLEGAL TRADES

The federal officer removal statute provides for removal of civil actions filed in state court against any federal officer or person acting under that officer. *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 142 (2d Cir. 2023). In order for a private citizen, such as Kramer, to effect removal under Section 1442(a)(1), he must: (i) show that he is a "person" under the meaning of the statute who "acted under a federal officer"; (ii) establish a causal connection by showing that he "performed the actions for which [he is] being sued under color of federal office"; and (iii) "raise a colorable federal defense." *Id.* at 142-43 (external citations omitted); 28 U.S.C. § 1442(a)(1). The critical inquiry is "to what extent [the removing defendant] acted under federal direction at the time [he was] engaged in conduct now being sued upon." *In re MTBE.*, 488 F.3d at 124-25. In other words, non-government defendants "must demonstrate that the acts for which they are being sued … occurred *because* of what they were asked to do by the government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis in original).

6

Here, Kramer fails to establish the requisite causal connection (*i.e.*, that he performed the alleged unlawful actions "under color of federal office") justifying removal under 28 U.S.C. § 1442(a)(1). The misconduct that forms the basis of the Complaint is Defendant's insider trading of Emergent stock while in possession of material nonpublic information for his own personal gain in violation of the Martin Act and not, as Defendant erroneously claims, "actions he and Emergent undertook at the direction of federal officers during the United States' COVID-19 pandemic response." Complaint, ¶¶ 119-22; Notice of Removal, ¶ 24. The misconduct at issue in this action has nothing to do with Emergent's alleged partnership with the federal government to produce COVID-19 vaccine drug substance.

The Second Circuit addressed and rejected a similar argument in *Exxon*, which involved a lawsuit filed by the State of Connecticut alleging Exxon violated a "single state statute" by publishing misleading advertisements questioning the connection between fossil fuels and global warming (despite internal research showing otherwise). 83 F.4th at 130-32. Like Defendant here, the defendant in *Exxon* argued that federal officer removal jurisdiction was proper based on defendant's current and historical business dealings with the federal government including, *inter alia*, defendant's leases of oil drilling sites from the federal government and defendant being subject to "myriad federal government requirements." *Id.* at 143. The Second Circuit disagreed, finding that the defendant had failed to show that it was acting "under federal officers" when it published the deceptive advertising, and had failed to establish a causal connection between the defendant's "role as a military supplier and the alleged campaign of deception" that formed the basis of Connecticut's claims. *Id.* at 144-45 (finding a "total mismatch between the business practices that Exxon Mobil asserts were subject to federal control and supervision (its actual production of fossil fuels) and the business practices of which Connecticut complains (its

7

marketing and public-relations campaigns to assuage consumers' fears about the environmental impacts of those fossil fuels)").

Similarly here, it is inexplicable how Kramer could claim that he was acting under federal direction when he entered into the Trading Plan and engaged in the illicit sales of his personal Emergent stock while having knowledge of Emergent's undisclosed and worsening contamination issues. Accordingly, Defendant cannot invoke federal officer removal jurisdiction over OAG's state law claims in this action. Defendant's failed attempts to shift the focus to Emergent's and Defendant's role in the COVID-19 pandemic are irrelevant to the misconduct at issue in this case and should be disregarded.

### III.   THERE IS NO FEDERAL QUESTION JURISDICTION IN THIS ACTION

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under this rule, the plaintiff is "the master" of the complaint and may "avoid federal jurisdiction by exclusive reliance on state law." *Exxon*, 83 F.4th at 132 (quoting *Caterpillar*, 482 U.S. at 392). Here, because the Complaint does not assert a cause of action based on a violation of federal law, Kramer incorrectly argues that removal is nevertheless proper because the Complaint purportedly asserts claims "arising under" federal law. Complaint ¶¶ 119-22; Notice of Removal ¶ 39.

"A complaint that does not allege a federal cause of action 'arises under' federal law only when (1) Congress expressly provides for removal of such state law claims, (2) the state law claims are completely preempted, or (3) the state law right turns on a question of federal law." *New York v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 131 (S.D.N.Y. 2021); *see also Fracasse v. People's*

*United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). Kramer's argument relies on the third option.[2] Notice of Removal ¶¶ 41-60.

"It is well-settled that 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *AMTAX Holdings 227, LLC v. Cohnreznick LLP*, 136 F.4th 32, 38 (2d Cir. 2025) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). As Kramer acknowledges, "[t]he federal issue must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)); Notice of Removal ¶¶ 41-60. Jurisdiction is only appropriate when all four elements are met. *Id*. None is met here.

### A. The Complaint Does Not Raise a Federal Issue that is Actually Disputed or Substantial

A reading of the Complaint makes it clear that a federal "issue" has not been raised here, let alone one that is actually disputed or substantial. This action involves the sale of securities by an insider for his own personal gain while in possession of material nonpublic information, in violation of state securities laws. Kramer once again attempts to shift the Court's focus to Emergent's role during the COVID-19 pandemic and argues that adjudication of this action will involve interpretation of "FDA law" and standards and federal securities laws. Notice of Removal ¶¶ 42-53. However, Emergent and Kramer's role in the COVID-19 pandemic response is irrelevant to the misconduct at issue in the Complaint. The Complaint does not allege that Emergent or Kramer engaged in any misconduct regarding the manufacture or development of the COVID-19 vaccine drug substance. Nor does the Complaint allege any disclosure violations against Kramer

---

[2] Defendant does not even suggest that Congress provided for removal of state law securities actions, or that the state law claims here are preempted by federal law.

or Emergent.[3] Rather, the sole "issue" in this action is whether Kramer violated New York state securities laws by engaging in insider trading of Emergent stock while in possession of material nonpublic information.

Case law makes it clear that insider trading is actionable under the Martin Act.[4] *See People v. Napolitano*, 282 A.D.2d 49, 51 (1st Dep't 2001) (finding that defendant engaged in insider trading in violation of the Martin Act); *People v. Florentino*, 116 Misc. 2d 692, 692–93 (Crim. Ct. N.Y. Cnty. 1982) (rejecting defendant's arguments that the Martin Act does not apply to insider trading).

This action only asserts state securities law claims. Yet, even if there could be analogous federal securities law violations, this Court has previously held that this would be insufficient to confer federal question jurisdiction because Plaintiff's "claims do not rest upon violation of federal laws." *Fin. & Trading, Ltd. v. Rhodia S.A.*, No. 04 CIV. 6083 (MBM), 2004 WL 2754862, at *8 (S.D.N.Y. Nov. 30, 2004) (rejecting defendants' argument that removal was proper because action asserting New York common law claims based on false and misleading statements made in prospectuses filed with the SEC would require the reviewing court to "look to the federal securities laws for the applicable standards"); *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006) (finding plaintiff's state law claims did not "arise under" federal law simply because the alleged false and misleading statements were made in a prospectus, a document

---

[3] That this action does not involve Emergent's role in the COVID-19 pandemic or disclosure violations is even more evident given that on January 15, 2026, OAG and Emergent entered into an Assurance of Voluntary Discontinuance ("AOD") settling OAG's claims against Emergent and providing for injunctive and monetary relief along with certain remedial relief, including amending the Company's insider trading policy to include certain enhancements aimed at preventing future insider trading. *See* ECF No. 1 C.

[4] Defendant incorrectly claims that insider trading has never been found to be actionable under the Martin Act and ignores case law demonstrating the opposite. *See* Notice of Removal at 1.

required by federal securities regulations); *Flynn ex rel. Moody's Corp. v. McDaniel*, 689 F. Supp. 2d 686, 690–91 (S.D.N.Y. 2010) ("That plaintiffs' state law claims rest on the same 'theory of fraud' as federal securities claims brought by different plaintiffs in different actions is irrelevant because it is well established that the mere fact that plaintiffs *could* have brought federal securities law claims based on the factual allegations contained in the complaint is insufficient to convert the state law claims into federal questions.") (emphasis in original); *Clark v. Bay Park Ctr. for Nursing & Rehab.*, No. 19-CV-506 (VSB), 2019 WL 3852430, at *3 (S.D.N.Y. Aug. 16, 2019) (finding that because the plaintiff "may prevail by establishing only the violation of state laws; he need not establish a violation of the FNHRA or any other federal law, so a federal issue is not 'necessarily raised'").

Despite Defendant's repeated attempts to recharacterize the nature of Plaintiff's claims as being related to Emergent and Kramer's role in the COVID-19 pandemic (*see supra* at 9-10), this action does not require interpretation or application of federal law. *See City of New York v. Exxon Mobil Corp.*, 733 F. Supp. 3d 296, 306 (S.D.N.Y. 2024), *aff'd*, 154 F.4th 36 (2d Cir. 2025) (rejecting defendants' multiple attempts to recharacterize consumer protection claims to be about emissions and stating that plaintiff's claims about false and misleading advertisements "do not become claims about transboundary pollution and foreign affairs [governed by federal law] just because the alleged deception relates to the impact of fossil fuels on the climate"); *New York v. Grasso*, 350 F. Supp. 2d 498, 504 (S.D.N.Y. 2004) (finding that even if the facts alleged in the Attorney General's complaint stated a violation of federal law, the federal court would still not have subject matter jurisdiction even though the misconduct overlaps with conduct that is also covered by New York Stock Exchange rules because the plaintiff is seeking to only enforce state law).

11

Defendant also suggests that the Complaint's "theory of liability rests on whether Kramer's adoption of a Rule 10b5-1 plan was permissible . . . ." *See* Notice of Removal ¶¶ 58-60. To the contrary, the single cause of action in the Complaint is predicated on Defendant's insider trading of Emergent stock for personal gain while in possession of material nonpublic information. Whether Defendant sold the stock in accordance with a Rule 10b5-1 trading plan is, at most, the basis of a potential affirmative defense to the insider trading charge. Such a potential defense would rest on the factual question of Defendant's good faith in adopting the Trading Plan while in possession of material nonpublic information, and not on an interpretation of federal law or rule. *See Gunn*, 568 U.S. at 263; *New York v. DailyPay, Inc.*, No. 25-CV-3439 (JGK), 2025 WL 2695712, at *7 (S.D.N.Y. Sept. 19, 2025).

Regardless, it is well-settled that federal defenses do not create federal question jurisdiction even if the defense is anticipated in the plaintiff's complaint. OAG's passing references to Emergent and Defendant's role in Operation Warp Speed and SEC Rule 10b5-1 in the Complaint were solely to provide context as to Kramer's knowledge of the material undisclosed issues with the manufacturing process for vaccine drug substance due to his position as Emergent's then-CEO, and to address and refute Kramer's anticipated defenses. This does not give rise to federal question jurisdiction. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 2 (1983) (an action "may not be removed on the basis of a federal defense … even if the defense is anticipated in the complaint and both parties admit that the defense is the only question truly at issue."); *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 139 (2d Cir. 2012) ("Because the complaint's references to federal law only anticipate and refute [the defendant's] defenses, they do not give rise to federal question jurisdiction."); *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 626 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 604 (2d

12

Cir. 2014) (finding that complaint's references to the Medicaid statutory and regulatory regime is "part of the story" of the parties' relationship and are, at best, defenses to the plaintiff's causes of action and do not confer federal jurisdiction over the state law causes of action); *Comm'r of New York City Dep't of Soc. Servs. v. Buckeye Coach LLC*, No. 24-CV-326 (VSB), 2024 WL 620649, at *2 (S.D.N.Y. Feb. 14, 2024) (finding defendant's argument that plaintiff's New York state law claim implicates "substantial constitutional issues" were federal defenses to the complaint and "federal defenses are not grounds for removal"); *Dowd v. All. Mortg. Co.,* 339 F. Supp. 2d 452, 456 (E.D.N.Y. 2004) (finding that the federal question raised by the defendant was "merely an anticipated defense to Plaintiff's [General Business Law] § 349 claim").

### B. This Court's Exercise of Jurisdiction Over this Action Would Disturb the Congressionally Approved Balance Between Federal and State Courts

Finally, this Court's exercise of jurisdiction over this action would disturb the balance of congressionally approved responsibilities between federal and state courts. Indeed, this Court has previously declined to exercise jurisdiction over actions involving state law claims even when, unlike the present case, they were predicated on violations of federal law. *See New York v. MoneyLion Inc*., No. 25-CV-4093 (CM), 2025 WL 3154497, at *4 (S.D.N.Y. Nov. 12, 2025) (finding that exercising jurisdiction over the action involving claims based on deceptive practices in violation of the federal Consumer Financial Protection Act ("CFPA") was improper as it could "meaningfully increase the number of cases that would be filed in federal court by opening the floodgates to analogous state suits premised on violations of other federal consumer protection statutes.") (external citations omitted); *DailyPay*, 2025 WL 2695712, at *8 (finding removal to be improper and "particularly problematic" in a consumer protection action filed by the State of New York seeking to enforce its own consumer protection laws and asserting claims for deceptive practices in violation of the federal CFPA).

Accordingly, Defendant has failed to establish that this Court has federal question jurisdiction over this action.

### IV. THIS COURT LACKS DIVERSITY JURISDICTION BECAUSE NEW YORK IS THE REAL PARTY IN INTEREST

Under 28 U.S.C. § 1332(a)(1), the district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States. Contrary to Kramer's contention that complete diversity exists among the parties, "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Cty. of Alameda*, 411 U.S. 693, 717 (1973); *see also Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("A state is not a citizen.").

A state's presence as one of the parties to a suit will destroy complete diversity, so when a state or state official brings suit, courts consider whether the state is the real party in interest before concluding that there is no diversity jurisdiction. *Mississippi v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014); *see also Amazon.com*, 550 F. Supp. 3d at 130. The real-party-in-interest analysis requires "consideration of the nature of the case as presented by the whole record," rather than a claim-by-claim analysis. *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 218 (2d Cir. 2013) (emphasis and external citations omitted).

Faced with this clear bar to diversity jurisdiction, Kramer asserts that the State of New York is only a nominal party in this dispute and that the real parties in interest are "discrete, identifiable New York investors and New York State employee retirement funds that purchased Emergent securities at the time of the harm." Notice of Removal ¶ 66. Citing to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F. Supp. 149 (S.D.N.Y. 1970), Kramer argues that the State has no sovereign or quasi-sovereign interest in this case because the Complaint refers to the existence of

14

holders of Emergent securities within New York State who, Kramer alleges, are the real parties in interest. Notice of Removal ¶¶ 66-67. Kramer additionally argues that because the Martin Act empowers OAG to "bring an action in the name of the people of the state of New York…", it is underlying individuals that the State is purporting to represent. *Id.* ¶ 64. However, *Cavicchia* is readily distinguishable from the instant action, as *Cavicchia* involved an Eleventh Amendment sovereign immunity issue as opposed to removal. As this Court confirmed in *People of New York v. Charles Schwab & Co.*, No. 09 CIV. 7709 (LMM), 2010 WL 286629, at *5 (S.D.N.Y. Jan. 19, 2010), the determination of who is the "real party in interest" is different with respect to sovereign immunity cases as opposed to removal cases, and the "particular objectives of the removal statutes, on the one hand, and the Eleventh Amendment, on the other, as well as the factual contexts of the case law, need to be kept in mind."

When acting upon its express statutory authority to enforce state law, the State is acting in its sovereign capacity—the sovereign interest in the "power to create and enforce a legal code, both civil and criminal." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). The specific purpose of the Martin Act "…was to create a statutory mechanism in which the Attorney-General would have broad regulatory and remedial powers to prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public…" *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 277 (1987). It is well-settled that the State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest. *State of N.Y. v. Gen. Motors Corp.*, 547 F. Supp. 703, 705–06 (S.D.N.Y. 1982) ("[S]urely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, [and] protection of its citizens from fraudulent and deceptive practices") (external citations omitted).

15

Courts can also consider the type of relief being sought when determining who is the real party in interest. Here, OAG seeks injunctive relief and disgorgement of Kramer's ill-gotten gains. That Plaintiff is seeking the equitable relief of disgorgement is another fact that, "by itself, supports the position that the State is the only real party in interest." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 405 (S.D.N.Y. 2014) (external citations omitted); *see also Amazon.com*, 550 F. Supp. 3d at 130 ("When the Attorney General seeks disgorgement of profits, the beneficiary is the State treasury … [t]hus, the State has an interest in the outcome of this litigation separate from the personal interests of its citizens.").

Further, even if OAG were seeking restitution and damages on behalf of New York investors, this still would not be sufficient to establish that the real parties in interest are New York investors. Rather, courts should consider the "primary purpose" of the action when determining who is the real party in interest. *Gen. Motors Corp.*, 547 F. Supp. at 707 (finding that the focus of the State's action was on "obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers" and "[t]hat recovery on behalf of an identifiable group is also sought should not require this Court to ignore the primary purpose of the action and to characterize it as one brought solely for the benefit for a few private parties.").

Here, the State of New York is the real party in interest and accordingly, there is no diversity jurisdiction.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court remand this case to the Supreme Court of the State of New York, County of New York.

Dated:  New York, New York
           March 20, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York


By: */s/ Nina M. Varindani*
     Nina M. Varindani
     T. Austin Brown
     Assistant Attorneys General
     Investor Protection Bureau
     28 Liberty Street, New York, NY 10005
     (212) 416-8488
     Nina.Varindani@ag.ny.gov
     ThomasAustin.Brown@ag.ny.gov

     Steven J. Glassman
     Special Counsel in Economic Justice
     Economic Justice Division
     Steven.Glassman@ag.ny.gov

     *Counsel for Plaintiff the People of the State of New York*

17

# WORD COUNT CERTIFICATION

In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Practices, I hereby certify that the Memorandum of Law in Support of Plaintiff's Motion to Remand contains 5034 words (including footnotes), exclusive of cover page, tables of contents and authorities, and signature block, as established using the word count function of Microsoft Word.

/s/ *Nina M. Varindani*
Nina M. Varindani
Assistant Attorney General

18